IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MARCAVAGE | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-CV-910 |
| | : | |
| | : | |
| WEST CHESTER UNIVERSITY, | : | |
| et al. | : | |

SURRICK, J.                                                    MARCH 15, 2007

<u>**MEMORANDUM & ORDER**</u>

_____Presently before the Court are Defendants West Chester University, the Pennsylvania

State System of Higher Education, Matthew Bricketto, Michael Bicking, and David Johnson's

Corrected Motion To Dismiss Amended Complaint (Doc. No. 12) and Plaintiff Michael

Marcavage's Motion For Leave To File Second Amended Complaint (Doc. No. 25).  For the

following reasons, Defendants' Motion to Dismiss will be granted and Plaintiff's Motion for

Leave to File will be denied.

**I.    BACKGROUND**

This action arises out of events that occurred on October 13, 2005.  On that day, Plaintiff,

who regularly engages in open-air preaching, traveled to the campus of West Chester University

("WCU") with a group of other individuals to engage in open-air preaching, distribute literature,

and display signs on the public streets, sidewalks, and grounds of the University concerning their

beliefs on religion and abortion.  (Doc. No. 10 at 3.)  While Plaintiff was engaged in these

activities, Dr. Matthew Bricketto, Vice-President for Student Affairs at WCU, approached

Plaintiff and informed him that he could not continue his activities because he was in violation of

a University policy.  (*Id.* at 4.)  The policy to which Bricketto referred, the "Noncommercial

Solicitation/Nonsponsored Presentation Policy," required individuals who wished to engage in

nonsponsored presentations and/or to distribute literature to register with the University at least

two hours prior to the time they wish to speak or distribute literature.[1]  (*Id.* at 4.)  Because

---

[1]  The "Noncommercial Solicitation/Nonsponsored Presentation" Policy that was in effect on October 13, 2005 includes the following language and provisions:

> West Chester University recognizes the rights of students and other persons under the Constitutions of the United States and the Commonwealth of Pennsylvania to assemble peacefully, exercise free speech rights, and demonstrate concerns.  All members of the University community are challenged to think critically, engage in discussion, and seek out opportunities to learn and express differing and similar viewpoints.  In order to manage these events and support its mission of teaching, research, and public service, the University may regulate the time, place, and manner of these activities to the extent it is constitutionally permitted to do so. The University does not seek to regulate the content of speech. . . .

> a)      On University grounds (outside of buildings) generally open to the public, persons may exercise the constitutionally protected rights of free expression, which include, but are not limited to, distribution of literature incidental to the exercise of these freedoms; however, these activities must not substantially interfere with the orderly operation of the campus, and must be conducted in accordance with the time, place, and manner of regulations stated in this policy.

> b)      Individuals wishing to engage in such nonsponsored presentations and/or distribute literature incidental to that activity shall register with the Vice President for Student Affairs or designee . . . and complete the appropriate request form at least two hours prior to the time they wish to speak and/or distribute literature.

> c)      Nonsponsored presentations/distributions of literature activities may take place in all public areas on the campus but must occur without amplified sound and should be at least 50 feet away from any classroom building; activities proximate to classroom buildings create a high potential for disruption to class activities and other essential operations of the University.  Any activities that are determined to be disruptive to classes or other essential operations of the University will need to cease.

> d)      Nonsponsored presentations/distributions of literature related to such activities may occur during reasonable hours in which the University can

Plaintiff had failed to register in advance, he was in violation of the policy. (*Id.*) During this

conversation, a West Chester University police officer and subsequently the Chief of

Police/Director of Public Safety, Michael Bicking, approached Plaintiff as well and informed

Plaintiff that if he chose not to comply with the policy and insisted on continuing his open air

---

assure the appropriate management of activity.

. . . .

f)   Failure to comply with this policy may result in one or more of the following:
   1.   A request to end activity and leave the campus;
   2.   An issuance of a citation;
   3.   Removal from campus (e.g. escort off campus, protective custody, arrest);
   4.   Other action consistent with federal, state, and local laws, as well as University policies.

g)   The purpose of this policy is to:
   1.   coordinate the potential multiple uses of limited space;
   2.   assure the preservation of the University facilities;
   3.   assure that the event is managed in a way that provides for the safety of the presenter and University community.

h)   A registration request could be denied for one or more of the following reasons:
   1.   the application is incomplete or contains a material falsehood or misrepresentation;
   2.   the applicant has damaged University property on previous occasions and has not paid for the damage;
   3.   a request has been granted to an earlier applicant for the same time and place;
   4.   the intended use would present an unreasonable danger to the health or safety of members of the University community;
   5.   the applicant has violated the terms of a prior request.

(Doc. No. 10 at Ex. A.)

preaching in violation of the policy, he would be arrested and charged with trespass.  (*Id.* at 5.)
Plaintiff advised the other members of his group to leave but he chose to remain and continue to
preach.  (*Id.*)  As a result, Plaintiff was issued a citation for criminal trespass.  (*Id.*)

On January 15, 2006, the citation for criminal trespass was withdrawn.  (*Id.* at 5-6.)  The
Chester County District Attorney's Office directed WCU Campus Police Sgt. David Johnson to
instead file the misdemeanor charge of defiant trespass against Plaintiff.  (*Id.* at 6.)  On June 5,
2006, the criminal charges were dismissed following a hearing on a Motion for Habeas Relief
filed by Plaintiff.[2]  (Doc. No. 30 at 5; Doc. No. 27 at 2.)

On October 16, 2006, WCU instituted a new policy pertaining to the right of individuals
to engage in expressive activities on its campus.  (Doc. No. 30 at 5-6; Doc. No. 27 at 4.)  On
November 29, 2006, the new policy was approved by Dr. Madeleine Wing Adler, the President
of WCU, pending action by the Council of Trustees.  (Doc. No. 28 at 1.)  The Council of
Trustees voted on and approved the policy the same day.  (*Id.*)  The new policy, which bears the
same name as the old, removes the two-hour registration requirement and, instead, states that
"[n]oncommercial literature distribution and non-sponsored presentations or demonstrations may
be held anywhere on University property (outside of buildings) generally open to the public so
long as they do not disrupt the normal operation of the University or infringe on the rights of
other members of the University community."[3]  (Doc. No. 28 at Ex. D1.)  The new policy also

---

[2] In an Opinion and Order dated June 1, 2006, the Honorable James P. MacElree II of the
Chester County Court of Common Pleas determined that the WCU policy, which formed the
basis for the prosecution of Plaintiff, did not pass constitutional muster.  As discussed
hereinafter, reasonable minds could differ on this issue.  (*See* Doc. No. 13 at Ex. B.)

[3] The new policy reads as follows:

_____

A.      On University property (outside of buildings) generally open to the public, persons may exercise their constitutionally protected rights to free expression including distribution of noncommercial literature incidental to the exercise of these rights and non-sponsored presentations or demonstrations.

B.      Noncommercial literature distribution and non-sponsored presentations or demonstrations may be held anywhere on University property (outside of buildings) generally open to the public so long as they do not disrupt the normal operation of the University or infringe on the rights of other members of the University community.

C.      In order that these activities not interfere with the operation of the University or the rights of others, they shall not
   1.      obstruct vehicular, pedestrian, bicycle or other traffic
   2.      obstruct entrances or exits to the buildings or driveways
   3.      interfere with educational activities inside or outside of the building
   4.      engage in any disorderly conduct as defined by applicable state and local statutes and/or ordinances
   5.      interfere with or preclude a scheduled speaker from being heard
   6.      interfere with scheduled University ceremonies or events
   7.      damage property, including but not limited to lawns, shrubs or trees
   8.      disturb the peace as defined by applicable state and local laws, statutes, and/or ordinances
   9.      engage in any conduct deemed to be unlawful by any applicable state and/or local law, statute and/or ordinances

D.      Students, employees, or visitors to the University whose activities interfere with the operation of the University, the rights of other members of the University community, or which violate the standards set forth in Paragraph C above will be asked by Public Safety to disperse and/or comply with this policy within a stipulated period of time.  Failure to respond positively to such a request may result in arrest by Public Safety and/or disciplinary action by the University.

. . . .

This policy supersedes all previous Noncommercial Literature Distribution Non-Sponsored Presentations or Demonstrations policies enacted prior to this date.

5

specifically provides that it supersedes all previously enacted Noncommercial Literature

Distribution Nonsponsored Presentations or Demonstrations policies.  (*Id.*)

On March 1, 2006, Plaintiff filed his initial Complaint against WCU, the Pennsylvania

State System of Higher Education, Matthew Bricketto, Michael Bicking, and David Johnson.

(Doc. No. 1.)  Plaintiff asserted claims under 42 U.S.C. § 1983 for violations of his First

Amendment rights to free speech, free exercise, and free assembly (First and Second Causes of

Action), violations of Fourteenth Amendment due process and equal protection (Third and

Fourth Causes of Action), and constitutional malicious prosecution (Ninth Cause of Action).

Plaintiff also asserted violations of the Pennsylvania Constitution by harm to Plaintiff's

reputation and standing in the community (Fifth Cause of Action), denial of equal protection

(Sixth Cause of Action), violation of the right to freedom of conscience/religious freedom

(Seventh Cause of Action), and violation of free speech rights (Eighth Cause of Action).  Finally,

Plaintiff asserted a state tort law claim of malicious prosecution.  (*Id.* at 10-19.)  Plaintiff's initial

Complaint sought declaratory and injunctive relief along with compensatory and punitive

damages.  (*Id.* at 20-21.)  On May 22, 2006, Plaintiff filed an Amended Complaint against the

same Defendants.  The Amended Complaint abandoned Plaintiff's claims for constitutional and

tortious malicious prosecution and sought only injunctive and declaratory relief for the

remaining claims under the federal and state constitutions.  (Doc. No. 10 at 14-15.)

---

(Doc. No. 28 at Ex. D1.)

Defendants filed a Motion to Dismiss the Amended Complaint on May 23, 2006.  (Doc. No. 12.)[4]  On October 12, 2006, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction, asserting that he planned to visit WCU on October 23-27, 2006 to engage in expressive activities.  (Doc. No. 16.)  Plaintiff sought injunctive and declaratory relief from the Court to ensure that WCU's original policy would not preclude his activities.  (*Id.*)  We denied this Motion on October 20, 2006, finding that since WCU had adopted a completely new policy, Plaintiff's Motion was moot.  (Doc. No. 19.)

On October 26, 2006, Plaintiff filed a Motion for Leave to File Second Amended Complaint, seeking leave to alter both the list of Defendants and the claims asserted.  (Doc. No. 25.)  Plaintiff seeks to remove WCU and the Pennsylvania State System of Higher Education as Defendants and to add the following individuals in their individual and official capacities:  Dr. Madeline Wing Adler, President of WCU, Dr. Judy G. Hample, Chancellor of the Pennsylvania State System of Higher Education, Thomas Fillippo, Chair of the Council of Trustees of WCU, and Members of the Council of Trustees of WCU.  (Doc. No. 25 at Ex. A.)  In addition, Plaintiff seeks to delete his claims under the Pennsylvania Constitution and reinstate his claims for constitutional and state tortious malicious prosecution, again including claims for compensatory and punitive damages for these two added claims.  (*Id.*)  Defendants seek dismissal of Plaintiff's Amended Complaint and oppose Plaintiff's Motion for Leave to File Second Amended Complaint.  (Doc. Nos. 12, 27, 28, 29.)

## II.    LEGAL STANDARD

---

[4]  Defendants originally filed a Motion to Dismiss the Amended Complaint on May 22, 2006 (Doc. No. 11) but re-filed a corrected version the following day.  (Doc. No. 12.)

A.      **Motion to Dismiss**

Defendants' Motion to Dismiss Plaintiff's Amended Complaint is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting that jurisdiction is proper bears the burden of showing that jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).  In reviewing the merits of a Rule 12(b)(1) motion, a district court may consider evidence that is outside the pleadings.  *Graham v. United States*, Civ. A. No. 97-1590, 2002 U.S. Dist. LEXIS 1765, at *4 (E.D. Pa. Feb. 5, 2002).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)).  The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.*, 883 F.2d at 247.

B.      **Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that after the first amended pleading, a party may amend its complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A court may deny a motion for leave to amend when certain factors are present.  These include:   "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'"  *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   LEGAL ANALYSIS

### A.     Motion to Dismiss

Defendants argue that Plaintiff's Amended Complaint should be dismissed because, among other reasons, Plaintiff's claims for injunctive and declaratory relief are now moot because they are based on a policy that has been wholly superseded and replaced.  (Doc. No. 20 at 2.)  It is well settled that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.  The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."  *DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974) (internal quotations and citations omitted).  The Supreme Court has made it clear that the question of mootness is one that the district court "must resolve before it assumes jurisdiction."  *Id.*   A case that began with justiciable issues can become moot after litigation has commenced.  "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able

9

to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) (citing *Rosetti v. Shalala*, 12 F.3d 1216, 1224 (3d Cir. 1993); *Brock v. Int'l Union, UAW*, 889 F.2d 685 (6th Cir. 1989); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)); *see also County of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001).

Defendants contend that WCU's adoption of a new policy on expressive activity has made moot Plaintiff's claims for declaratory and injunctive relief.  They contend that because the new policy on expressive activities on campus is far more permissive than the original policy, Plaintiff's claims for equitable relief, which were based solely on the old policy are now moot. Plaintiff objected to the old policy on a number of grounds including the two-hour registration requirement, the fifty-foot buffer zone around classroom buildings, the restriction of expressive activities to "reasonable hours in which the University can assure the appropriate management of activity" (Doc. No. 10 at Ex. A), and the prohibition on sound amplification without consideration for particular circumstances that may arise.  (*See* Doc. No. 10 at 6-7.)  Plaintiff's Amended Complaint seeks a declaratory judgment that the policy in effect on October 13, 2005 is facially unconstitutional.  It also seeks preliminary and permanent injunctions prohibiting enforcement of the policy.  (*Id.* at 15.)

However, the new policy, instituted on October 16, 2006, deletes all such specific restrictions and prohibitions, replacing them only with a general statement that expressive activities must not "interfere with the operation of the University or the rights of others."  (Doc. No. 28 at Ex. D1.)  The policy's only prohibitions are of a general nature and dictate only that those exercising free speech rights shall not:

> obstruct vehicular, pedestrian, bicycle or other traffic, obstruct entrances or exits to the buildings or driveways, interfere with educational activities inside or outside of the building, engage in any disorderly conduct as defined by applicable state and local statutes and/or ordinances, interfere with or preclude a scheduled speaker from being heard, interfere with scheduled University ceremonies or events, damage property . . . disturb the peace as defined by applicable state and local laws, statutes, and/or ordinances, [and] engage in any conduct deemed to be unlawful by any applicable state and/or local law, statute and/or ordinances.

(*Id.*)  As a result, Plaintiff's demands for declaratory and injunctive relief based on the old policy have, indeed, become moot as a result of the adoption of the new policy.

Plaintiff objects to a mootness finding, arguing that WCU's "voluntary cessation" of the old policy does not deprive this Court of jurisdiction over Plaintiff's claims for equitable relief. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs.*, 528 U.S. 167, 189  (2000) (internal quotations and citations omitted). The Supreme Court has announced the following standard:  "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *United States v. Gov't of the Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004).  "Only when 'the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated' are federal courts precluded from deciding the case on mootness grounds." *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004) (quoting *W.T. Grant Co.*, 345 U.S. at 633); *see also Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (holding that the airport authority's change in policy rendered the case

moot because the change was a result of "substantial deliberation" and had been "consistently applied" for three years).

In response to Defendants' mootness argument, Plaintiff argued in a Brief submitted on November 8, 2006, that the new policy had only been signed by the WCU president and had not been ratified by the Council of Trustees as is required under Pennsylvania law. (Doc. No. 26 at 3-4.) Plaintiff thus claimed that the new policy was not valid and did not serve to effectively repeal the old policy. However, on November 29, 2006, the Council of Trustees approved the new policy. In addition, the version approved by the Council of Trustees includes a sentence that specifically indicates that the new policy supersedes all policies previously enacted. (Doc. No. 29.) There is no evidence to suggest that this change of policy is temporary or that after the conclusion of litigation, the University will revert to its former policy. In addition, the new policy was approved by the president of WCU and ratified by the Council of Trustees in accordance with the relevant law. Plaintiff has, in effect, received the relief he sought, the ability to preach and distribute literature on the WCU campus without registration requirements and without restrictions regarding the proximity to buildings, the time, and the level of sound amplification. At this point, any assessment of the constitutionality of the old policy is purely academic, an exercise which we are precluded from undertaking. *See Jews for Jesus*, 162 F.3d at 629 (finding that where the airport changed its policy on literature distribution, there was no meaningful relief left for the court to give and any discussion of the constitutionality of the old policy would be purely academic and hypothetical). As the Supreme Court made clear: "We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us." *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982).

Plaintiff's claims for declaratory and injunctive relief are moot.  Because Plaintiff's Amended Complaint seeks only equitable relief based on the old policy, we are compelled to grant Defendants' Motion to Dismiss the Amended Complaint in is entirety.

**B.      Motion For Leave To File Second Amended Complaint**

In the Motion filed on November 8, 2006, Plaintiff seeks leave of court to file a second amended complaint.  As mentioned above, the proposed amendment would make the following changes:  (1) removal of WCU and the Pennsylvania State System of Higher Education as Defendants, (2) addition of Dr. Madeline Wing Adler, Dr. Judy G. Hample, Thomas Fillippo, and Members of the Council of Trustees of WCU in their individual and official capacities as Defendants, and (3) addition of the previously withdrawn claims for constitutional and state tortious malicious prosecution, with a demand for compensatory and punitive damages for these two claims.  (Doc. No. 25 at Ex. A.)  Plaintiff's proposed Second Amended Complaint would also include the § 1983 claims under the First and Fourteenth Amendments and the demand for declaratory and injunctive relief regarding WCU's former expressive activities policy.

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005) (citing *Grayson v. Mayview State Hosp.*, 293

F.3d 103, 108 (3d Cir. 2002).  The Third Circuit has counseled that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted" and that "[i]n assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

        1.    *Constitutional Malicious Prosecution Claim*

      Defendants argue that Plaintiff's constitutional malicious prosecution claim is futile against all of the individual Defendants (the only remaining Defendants in the proposed Second Amended Complaint) in both their personal and official capacities.  With regard to suit against Defendants in their official capacities, Defendants contend that the Eleventh Amendment immunizes these Defendants from suit for damages in this Court, citing *Skehan v. State System of Higher Education*, 815 F.2d 244, 249 (3d Cir. 1987) (finding that the Pennsylvania State System of Higher Education "is, effectively, a state agency and therefore entitled to the protection of the eleventh amendment in the federal courts") and *Young v. Medden*, No. Civ. A. 03-5432, 2006 WL 456274, at *18 (E.D. Pa. Feb. 23, 2006) ("To the extent the plaintiff's lawsuit seeks money damages from state officials acting in their official capacities, such claims are also barred by the Eleventh Amendment.").  Plaintiff does not contest this assessment of the officials' eleventh amendment immunity but clarifies in his response that he seeks damages against Defendants in their individual capacities only and prospective relief against Defendants in their official capacities.  (Doc. No. 30 at 11.)  We have already concluded that any claim for prospective relief has been mooted by WCU's new policy.  As a result, such a claim against new individual

Defendants is clearly futile and we are compelled to deny leave to amend the Complaint to include it.

Defendants also contend that any claim for damages against the newly proposed Defendants in their personal capacities is also futile because of the doctrine of qualified immunity. The Supreme Court has described qualified immunity as follows: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[5] In assessing a defense of qualified immunity, the "court must focus on the 'objective legal reasonableness' of the conduct and defendants bear the burden of demonstrating an entitlement." *Atiyeh v. Hairston*, No. Civ. A. 92-3368, 1993 WL 532976, at *4 (E.D. Pa. Dec. 22, 1993); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."). The concept of qualified immunity acts as "'an immunity from suit rather than a mere defense to liability,' therefore, immunity questions should be resolved at the 'earliest possible stage in litigation.'" *Id.* (quoting *Hunter*, 502 U.S. at 227).

---

[5] While *Harlow* was a *Bivens* action against federal officials, its approach to qualified immunity has been applied to § 1983 actions against state officials. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Harlow was a suit against federal, not state, officials. But our cases have recognized that the same qualified immunity rules apply in suits against state officers under § 1983 and in suits against federal officers under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).").

The Third Circuit in *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), provided a framework for assessing a claim of qualified immunity in a case involving alleged constitutional violations by state officials.  "In determining qualified immunity, we first ask whether the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.  If so, we then ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Gilles*, 427 F.3d at 203-04 (internal citations omitted).  In the instant case, Defendants have asserted a defense of qualified immunity to the constitutional malicious prosecution claim.  Although not specified in the Complaint, we assume that Plaintiff is basing this claim on an alleged Fourth Amendment violation because he refers to his "loss of liberty" among the harms suffered as a result of the criminal prosecution.[6]  (Doc. No. 25 at Ex. A, p. 16.)

"To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that:  (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the

---

[6]  Plaintiff's proposed Fifth Cause of Action incorporates two claims for malicious prosecution, one brought pursuant to § 1983 and the other as a supplemental state claim.  However, Plaintiff does not identify a specific constitutional right allegedly infringed that serves as the basis for the § 1983 claim.  The Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994), held that the Fourth Amendment, and not substantive due process, must be the basis for a claim of constitutional malicious prosecution.  *Id.* at 271 n.4, 275.  Because Plaintiff asserts a "loss of liberty," a component of the fourth amendment malicious prosecution claim, we analyze the claim within that framework.

plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, Nos. 05-5029, 05-5139, 2007 WL 465704, at *5 (3d Cir. Feb. 14, 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

The primary question here is whether probable cause existed for the prosecution.[7] "Under the second step of the [qualified immunity] analysis, a police officer is entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest." *Gilles*, 427 F.3d at 205. Plaintiff was issued a citation for criminal trespass and was ultimately prosecuted on the misdemeanor charge of defiant trespass. A person commits the offense of defiant trespass if "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: (I) actual communication to the actor . . ." 18 Pa. C.S. § 3503(b). Plaintiff does not argue that he had no notice and, in fact, admits that Chief of Police Michael Bicking informed him that he was in violation of the then-existing policy and told him that if he did not comply with the policy or leave, he would be charged with trespass. (Doc. No. 25 at Ex. A, p. 7.) Plaintiff's sole argument is that WCU's former policy was facially unconstitutional and that, as a result, he was entitled to remain on

---

[7] We note that there is also some question as to whether Plaintiff has sufficiently alleged a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson,* 2007 WL 465704, at *5. Plaintiff's proposed Second Amended Complaint alleges only that he was "cited with the crime of criminal trespass" and that ultimately, WCU Campus Police filed misdemeanor charges of defiant trespass against him. (Doc. No. 25 at Ex. A, p. 7.) Plaintiff states that he suffered a "loss of liberty" but fails to allege any facts to support this statement. The "deprivation of liberty" is an essential component of the malicious prosecution claim. "[P]rosecution without probable cause is not, in and of itself, a constitutional tort. Instead, the constitutional violation is the deprivation of liberty accompanying the prosecution." *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998).

WCU property and to continue his expressive activities.  Plaintiff argues that because the policy was unconstitutional, his arrest and prosecution lacked probable cause.

As described above, WCU's former policy had several elements.  First, the policy recognized "the rights of students and other persons under the Constitutions of the United States and the Commonwealth of Pennsylvania to assemble peacefully, exercise free speech rights, and demonstrate concerns."  (Doc. No. 10 at Ex. A.)  It then stated:  "In order to manage these events and support its mission of teaching, research, and public service, the University may regulate the time, place, and manner of these activities to the extent it is constitutionally permitted to do so."  (*Id.*)  The regulations involved:  a two-hour in advance registration requirement, a restriction on amplified sound, a requirement that all demonstrations be at least fifty feet away from any classroom building, and a requirement that expressive activities occur "during reasonable hours in which the University can assure the appropriate management of activity."  (*Id.*)

It is clear that the government's right to regulate expression in a public forum is "subject to the protections of the First Amendment."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  In addition, "public university campuses historically contain places where space is specifically designated by society and universities themselves for speech."  *Bowman v. White*, 444 F.3d 967, 979 (8th Cir. 2006).  Assuming WCU's property as described in its policy is a designated public forum, the Supreme Court has made clear that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward*, 491 U.S.

18

at 791.  There is no evidence that WCU's former policy was anything but content-neutral.  By its explicit language, it regulated nonsponsored presentations and/or distribution of literature incidental to those presentations without regard to the content of those presentations or the viewpoint they expressed.  In addition, the express purpose of the policy was to "coordinate the potential multiple uses of limited space, assure the preservation of the University facilities, and assure that the event is managed in a way that provides for the safety of the presenter and University community."  The various specific regulations including advance registration, prohibition on sound amplification, requirement of a fifty-foot buffer from classroom buildings, and the requirement that activities occur within "reasonable hours" are all potentially valid time, place, and manner restrictions that serve the University's legitimate purpose in supporting expressive activities while insuring the safety of its community and preservation of its property.  *See Bowman*, 444 F.3d at 980 (finding university's permit requirement, three-day notice requirement, and ban on demonstrations during final exam days to be constitutional).

    At this point, there is no need to make a determination on the constitutionality of WCU's former policy.  The policy no longer exists.  The only relevant inquiry is whether it was reasonable to believe that the policy was constitutional such that it provided probable cause for the prosecution of Plaintiff.  It is beyond doubt that at the very least, reasonable minds could disagree as to whether the policy passed constitutional muster.  As a result, we are compelled to conclude that Defendants, in their personal capacities, are entitled to qualified immunity from suit for damages on the constitutional malicious prosecution claim.  Since Defendants are entitled to qualified immunity, Plaintiff's claim is futile, and we will deny leave to amend the Complaint to add it.

2.       *State Tort Law Malicious Prosecution Claim*

Having concluded that Plaintiff's claims for prospective relief must be dismissed as moot and having denied leave to amend the Complaint to add a claim for damages for constitutional malicious prosecution, we are left only with Plaintiff's request for leave to add a claim for state law tortious malicious prosecution for which he seeks compensatory and punitive damages. Were we to grant leave to amend, this would be the only remaining claim in Plaintiff's Complaint.

Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Were we to permit leave to amend to add Plaintiff's state tort claim, we would do so pursuant to the doctrine of supplemental jurisdiction. The Supreme Court has noted that supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), and that the exercise of supplemental jurisdiction "must depend on questions of judicial economy, convenience, and fairness to litigants." *City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (citing *Gibbs*, 383 U.S. at 726). However, the cases are clear that when all of the federal claims are dismissed at an early stage, the district court should decline the exercise of supplemental jurisdiction over the state claims absent extraordinary circumstances. *City of Pittsburgh Comm'n on Human Relations*, 163 F. App'x at 166 (citing *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("'[W]here the claim over which the district court has original

jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (citation omitted); *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) ("We have held that pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'") (citation omitted)).  As the Supreme Court observed in *Gibbs*:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726.

In this case, we can see no rational reason to exercise jurisdiction over the state malicious prosecution claim given that we have dismissed or denied leave to add all other federal claims. Accordingly, we will deny leave to amend the Complaint to add Plaintiff's state law claim for damages, effectively dismissing the entire action.  Plaintiff may certainly pursue his state law claims in state court if he so desires.

An appropriate Order follows.

21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MARCAVAGE　　　　　:
　　　　　　　　　　　　　　　　:　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:　　　　NO. 06-CV-910
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
WEST CHESTER UNIVERSITY,　　:
et al.　　　　　　　　　　　　:

**<u>ORDER</u>**

AND NOW, this <u>15th</u> day of March, 2007, upon consideration of Defendants' Corrected

Motion To Dismiss Amended Complaint (Doc. No. 12) and Plaintiff Michael Marcavage's

Motion For Leave To File Second Amended Complaint (Doc. No. 25), it is ORDERED as

follows:

1.　　Defendants' Motion to Dismiss (Doc. No. 12) is GRANTED.  Plaintiff's

　　　Amended Complaint is DISMISSED.

2.　　Plaintiff's Motion For Leave to File Second Amended Complaint (Doc. No. 25) is

　　　DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge